### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

CARL REYNOLDS                          CIVIL ACTION NO. 24-0951

VERSUS                                 JUDGE S. MAURICE HICKS, JR.

BRIAN ANDERSON, ET AL.                 MAGISTRATE JUDGE HORNSBY

### MEMORANDUM RULING

Before the Court are three unopposed Motions to Dismiss. First, Defendants James E. Stewart ("DA Stewart") and Fernando Grider ("ADA Grider") (collectively, "DA Defendants") filed a Motion to Dismiss Penalty, Punitive, or Exemplary Damages. See Record Document 9. Second, Defendants Brian Anderson ("Officer Anderson"), Shayne Gibson ("Chief Gibson"), and the Town of Greenwood ("the Town") (collectively, "Greenwood City Defendants") filed a Motion to Dismiss pursuant to Federal Rule 12(b)(6). See Record Document 12. Third, the DA Defendants filed another Motion to Dismiss pursuant to Federal Rule 12(b)(6). See Record Document 14. Plaintiff Carl Reynolds ("Reynolds") did not file an opposition to any of the instant Motions.

For the reasons stated below, the Greenwood City Defendants' Motion to Dismiss (Record Document 12) is **GRANTED**. All claims asserted against the Greenwood City Defendants are **DISMISSED WITH PREJUDICE**. The DA Defendants' second Motion to Dismiss (Record Document 14) is **GRANTED**. All claims asserted against the DA Defendants are **DISMISSED WITH PREJUDICE**. The DA Defendants' first Motion to Dismiss (Record Document 9) is **MOOT**.

**BACKGROUND**

On or about February 12, 2022, Officer Anderson, in his capacity as a police officer with the City of Greenwood, was dispatched to a Tractor Supply in Greenwood to investigate a possible theft of goods. See Record Document 5 at ¶ 6. Upon arrival at Tractor Supply, Officer Anderson, along with other unknown officers, were informed by an employee that a black male had stolen merchandise from the store. See id. at ¶ 7. All of the officers, including Officer Anderson, were shown premises surveillance video footage of the alleged theft. See id. at ¶ 8. Officer Anderson obtained a copy of the surveillance video for use in his investigation. See id.

On the same day, a second theft at Tractor Supply was reported, allegedly committed by a black male suspect. See id. at ¶ 9. On February 16, 2022, Officer Anderson uploaded a still photograph of the black male, as shown in the surveillance video, to Caddo Parish Crime Stoppers ("Crime Stoppers"). See id. at ¶ 10. That same day, Officer Anderson received a tip from Crime Stoppers identifying the black male suspect of the Tractor Supply theft as Reynolds. See id. at ¶ 11. Upon receiving this tip, Officer Anderson requested a record check on Reynolds. See id. at ¶ 12. After obtaining a photograph of Reynolds and comparing said photograph with the surveillance video, Officer Anderson found that Reynolds supposedly bore a resemblance to the black male in the surveillance video. See id. at ¶ 13.

On or about February 18, 2022, Officer Anderson executed an Affidavit for Arrest Warrant, which allegedly stated that Reynolds's photograph and the black male in the surveillance video "were a match." See id. at ¶ 14. On February 21, 2022, Officer Anderson contacted Home Depot Asset Protection personnel in Texas to inquire about

thefts involving similar merchandise as the Tractor Supply in Greenwood. See id. at ¶ 15. During this communication, Home Depot personnel allegedly told Officer Anderson that the suspect in the Home Depot thefts was a black male and had an accomplice. See id. at ¶ 16. Officer Anderson subsequently sent a photograph of Reynolds to the police in Lufkin, Tyler, and Longview, Texas and allegedly asserted that Reynolds was one of the perpetrators of the Home Depo thefts. See id. at ¶ 17. Arrest warrants were issued in Angelina County, Smith County, and Gregg County, Texas for Reynolds's arrest for these thefts. See id. at ¶ 18.

On or about April 1, 2022, Officer Anderson executed an Affidavit for Search Warrant, which stated that the photograph of Reynolds and Tractor Supply suspect "were a match," and he believed the stolen merchandise may be found at Reynolds's residence. See id. at ¶ 19. On the basis of this affidavit, a search warrant was issued. See id. Thereafter, Officer Anderson and several unknown Shreveport police officers executed the search warrant at his residence. See id. at ¶ 20. No stolen evidence was found. See id. Reynolds was then arrested and allegedly interrogated by Officer Anderson. See id. at ¶ 21.

During this alleged interrogation, Reynolds claims Officer Anderson showed him the still shot of the person captured in the Tractor Supply surveillance video, to which he asserted that was not him. See id. at ¶ 22. Officer Anderson asked if Reynolds had been at the Tractor Supply on February 15, 2022, to which he responded he was in the hospital that day. See id. Reynolds denied any involvement in the thefts. See id.

After he was arrested in Caddo Parish, Reynolds was incarcerated for 31 days prior to being released on bond. See id. at ¶ 23. He claims Officer Anderson never

produced the Tractor Supply surveillance video or the results of fingerprint analysis during the Caddo Parish criminal proceedings. See id. at ¶ 24. After Reynolds's arrest in Smith County, Texas, he was incarcerated for 97 days prior to being released on bond. See id. at ¶ 26. The Smith County charges were dismissed on July 17, 2023. See id. at ¶ 28. The charges in Angelina County, Texas were dismissed on or about June 8, 2023. See id. at ¶ 27. The Caddo Parish charges were also later dismissed. See id. at ¶ 29. On or about February 14, 2024, Reynolds was arrested and detained by the Bossier City Police Department for an outstanding arrest warrant issued by Gregg County, Texas until the Texas warrant was recalled. See id. at ¶ 30.

In his First Amended Complaint, Reynolds asserts the following six claims: (1) § 1983 Claim; (2) Negligence; (3) § 1983 Claim; (4) § 1983 Claim; (5) Louisiana Malicious Prosecution Claim; and (6)[1] § 1983 Claim for Failure to Disclose Exculpatory Evidence/Brady Violation. See id. at ¶¶ 31–75. Under his first claim, Reynolds also seeks a judgment for compensatory and punitive damages, plus reasonable attorney's fees. See id. at 22. With respect to his second claim, he requests a judgment for compensatory damages. See id. The instant Motions ensued.

In the first Motion to Dismiss, the DA Defendants assert that since they were acting in the discharge of their official duties, a finding of punitive damages against them would be tantamount to a finding against the District Attorney's Office, which is improper. See Record Document 9-1 at 5. The DA Defendants cite to case law which holds that a municipality is immune from punitive damages under § 1983. See id. at 3. Additionally,

---

[1] The Court points out that Reynolds list the incorrect Roman numeral for his sixth claim. The proper Roman numeral should be VI instead of XI. Since his claims are listed in numerical order, the Court will treat his "Claim XI" as his sixth and final claim. The Court will use the correct number.

4

they contend that under Louisiana law, punitive damages are not allowed in civil cases unless specifically provided for by statute. See id. at 5. Because there is no specific statutory provision for an award of punitive damages here, they submit Reynolds does not have a claim for punitive damages against the DA Defendants under Louisiana law. See id. They ultimately request that all punitive damages be dismissed under both state and federal law. See id. at 6.

In the second Motion to Dismiss, the Greenwood City Defendants assert several arguments. See Record Document 12-1. First, they aver that most of Reynolds's claims have prescribed. See id. at 17. Reynolds filed his Original Complaint on July 17, 2024, and the Greenwood City Defendants advance that all of Officer Anderson's alleged acts for the Caddo Parish charge occurred before July 17, 2023. See id. at 18. Additionally, they argue his claim based on the Angelina County charge is prescribed, as the entire criminal case for that alleged crime was dismissed on June 8, 2023. See id. They contend his claims based on the Smith County charge are also prescribed, as the entire criminal case for that alleged crime was dismissed by July 17, 2023. See id.

Furthermore, the Greenwood City Defendants submit that Officer Anderson and Chief Gibson, in their individual capacities, are entitled to qualified immunity as to Reynolds's Fourth Amendment claims. See id. at 19. They aver that Reynolds does not sufficiently allege facts showing a false arrest or imprisonment. See id. Moreover, they advance that he fails to allege sufficient facts showing that Officer Anderson or Chief Gibson violated a clearly established law. See id. at 23.

The Greenwood City Defendants maintain that Officer Anderson and Chief Gibson, in their individual capacities, are entitled to qualified immunity on Reynolds's claims under

the Fifth, Sixth, and Fourteenth Amendments, as well as his <u>Brady</u> violations. <u>See id.</u> at 25. Additionally, they contend that all federal constitutional claims against Officer Anderson and Chief Gibson, in their official capacities, should be dismissed as duplicative of the <u>Monell</u> claims against the Town. <u>See id.</u> at 27. Moreover, the Greenwood City Defendants argue Reynolds fails to plead any facts that meet the elements of a <u>Monell</u> claim. <u>See id.</u> at 28. They argue he does not allege an unconstitutional custom, policy, or practice. <u>See id.</u>

To the extent Reynolds asserts any conspiracy claims, the Greenwood City Defendants aver that he fails to plead any facts supporting such claims, and thus, such claims should be dismissed with prejudice. <u>See id.</u> at 30. Furthermore, they submit all claims for punitive damages against the Greenwood City Defendants should be dismissed with prejudice, as should any claims for punitive damages under state law. <u>See id.</u> They contend that Reynolds's state constitutional and state tort claims against them should be dismissed with prejudice because they are immune. <u>See id.</u> at 31–32.

In the third Motion to Dismiss, the DA Defendants analyze each claim asserted in Reynolds's First Amended Complaint as applied to them. <u>See</u> Record Document 14-1. With respect to his first claim under § 1983, the DA Defendants argue there are no factual allegations against them. <u>See id.</u> at 11. They advance that Reynolds's allegations discuss purported misconduct by the City of Greenwood Defendants only. <u>See id.</u> As to his second claim, negligence, the DA Defendants submit there are no factual allegations against them. <u>See id.</u> Rather, Reynolds's allegations under his second claim only point to Officer Anderson's alleged breach. <u>See id.</u>

With respect to Reynolds's third claim under § 1983, the DA Defendants contend that any false arrest claim is prescribed, and any other purported claims against them are subject to dismissal due to absolute prosecutorial immunity. See id. at 12. As to Reynolds's fourth claim, his Monell claim, the DA Defendants opine that he asserts vague and conclusory policies, customs, or practices for which the individual DA Defendants have absolute prosecutorial immunity and/or which fail to state a claim upon which relief can be granted. See id. at 12. They submit that the allegations under claim four fail to assert facts concerning other instances of claimed similar violations. See id. The DA Defendants believe his fourth claim contains nothing more than formulaic language and conclusory allegations insufficient to support a Monell claim. See id.

As to Reynolds's fifth claim for malicious prosecution under Louisiana law, the DA Defendants assert that his claims for false arrest are prescribed. See id. at 13. Additionally, they contend this claim fails to state a claim upon which relief can be granted since the DA Defendants are entitled to absolute prosecutorial immunity. See id. With respect to Reynolds's sixth claim for failure to disclose exculpatory evidence, also known as a Brady violation, they submit that he makes improper group allegations against all Defendants without delineating which Defendant committed which complained of act and during what time frame. See id. They argue the relevant pleadings from the criminal proceedings show that the DA Defendants consistently updated their discovery production to Reynolds's counsel, which consisted of the continuing investigations, conversations, and work being done by law enforcement in response to Reynolds's assertions that he was not the person responsible for the theft. See id. The DA Defendants advance that such information and evidence was already in Reynolds's possession and

cannot be deemed to be <u>Brady</u> material. <u>See id.</u> Furthermore, they provide that the charges against Reynolds never went to trial and were dismissed before a trial was ever held; thus, <u>Brady</u> was never implicated. <u>See id.</u>

## LAW AND ANALYSIS

**I. Legal Standards.**

<u>(a) Pleading and Dismissal Standards.</u>

Federal Rule of Civil Procedure 8(a)(2) governs the requirements for pleadings that state a claim for relief and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F<small>ED</small>. R. C<small>IV</small>. P. 8(a)(2). The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> at 555, 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. F<small>ED</small>. R. C<small>IV</small>. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." <u>Colle v. Brazos Cnty., Tex.</u>, 981 F. 2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. <u>See Iqbal</u>, 556 U.S.

at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standards to survive such a motion. See id. at 678–79, 1949–50. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

(b) Prescription.

Dismissal under Rule 12(b)(6) may be appropriate "where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for the tolling or the like." Jones v. Alcoa, Inc., 339 F. 3d 359, 366 (5th Cir. 2003). For § 1983 claims, the limitations period "'is determined by state personal injury law.'" Holmes v. White, 718 F. Supp. 3d 585, 594 (E.D. La. 2024). As of July 1, 2024, the liberative prescriptive period for delictual actions in Louisiana changed from one year to two years. See LA. CIV. CODE art. 3493.1. However, this new prescriptive period is given prospective application only; therefore, any delictual actions occurring before July 1, 2024, retain the one-year time limitation. See id.

"While Louisiana law determines the limitations period for plaintiff's § 1983 claims, federal law determines the accrual of these claims." Holmes, 718 F. Supp. 3d at 594. Under federal law, "an action accrues when a plaintiff has 'a complete and present cause of action' or when 'the plaintiff can file suit and obtain relief.'" Id. Generally, "the limitations period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" Id. (internal quotation marks omitted).

(c) Prosecutorial Immunity.

In Imbler v. Pachtman, the United States Supreme Court "held that a state prosecutor whose 'activities [are] intimately associated with the judicial phase of the criminal process' is absolutely immune from a civil lawsuit pursuant to § 1983." Id. at 597–98 (quoting Imbler, 424 U.S. 409, 410, 96 S. Ct. 984 (1976)). Absolute immunity "applies when a prosecutor is acting as 'an officer of the court,' but not when the prosecutor 'is instead engaged in…investigative or administrative tasks.'" Id. at 598. A defendant "'bear[s] the burden of proving that the conduct at issue served a prosecutorial function.'" Id.

The Louisiana Supreme Court adopted Imbler's rationale in Knapper v. Connick, 681 So. 2d 944 (La. 1996), and "'established that Louisiana district attorneys and their assistants are absolutely immune from civil liability arising from actions taken within the scope of their prosecutorial duties.'" Id. at 601. Thus, "'Louisiana law tracks federal law on absolute prosecutorial immunity.'" Id. at 602. In 2023, the Louisiana Supreme Court "reaffirm[ed] [its] holding in Knapper and reiterate[d] that, where a prosecutor acts within the scope of his prosecutorial duties as an advocate for the state and the alleged misconduct arises from 'conduct intimately associated with the judicial phase of the criminal process,' he is entitled to absolute immunity." Id. (citing Jameson v. Montgomery, 366 So. 3d 1210, 1219 (La. 2023), quoting Knapper, 681 So. 2d at 951). Even when a prosecutor's conduct is "'intentional or malicious,'" this absolute immunity applies. Id.

(d) Qualified Immunity.

"Qualified immunity shields an officer from liability if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Benavides v. Nunez, No. 24-20445, 2025 WL 1943949, at *2 (5th Cir. July 16, 2025) (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808 (2009) (internal quotation marks omitted)). "To overcome qualified immunity, the plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" Id. If an officer defeats either prong, he is entitled to qualified immunity. See id.

(e) Monell Claim.

"A suit against a government officer 'in his official capacity' is the same as a suit against the government entity of which he is an agent." Holmes, 718 F. Supp. 3d at 604 (internal quotation marks omitted). There is no respondeat superior liability under § 1983; rather, municipalities are liable under § 1983 "'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may facilely be said to represent official policy, inflicts the injury….'" Id. (internal quotation marks omitted). Municipal liability under § 1983 requires three elements: "'(1) a policymaker, (2) an official policy or custom, and (3) a violation of constitutional rights whose "moving force" is that policy or custom.'" Id. A plaintiff seeking Monell liability "must 'identify a municipal policy or custom that caused [his] injury.'" Id. (internal quotation marks omitted). "'The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with

policymaking authority.'" Id. (quoting Valle v. City of Hous., 613 F. 3d 536, 542 (5th Cir. 2010), citing Burge v. St. Tammany Parish, 336 F. 3d 363, 369 (5th Cir. 2003)).

## II. Analysis.

The Court will analyze each of Reynolds's claims individually to determine whether dismissal is appropriate.

### (1) § 1983 Claim Against City of Greenwood Defendants.

The Court agrees with the DA Defendants that Reynolds's first claim does not contain any specific allegations or factual assertions towards them; rather, his allegations only point to the alleged actions of the Greenwood City Defendants. Therefore, even though Reynolds's First Amended Complaint states that his first claim is asserted against all Defendants, his allegations within this claim do not support that statement. To the extent that he asserts his first claim against the DA Defendants, it is **DISMISSED WITH PREJUDICE**.

Reynolds asserts that Officer Anderson "was acting under color of state law." See Record Document 5 at ¶ 32. He submits that Officer Anderson's conduct "was intentional, without probable cause, … in wanton disregard of [his] innocence, in violation of [his] innocence, [and] in violation of [his] rights as guaranteed by the Fourth, Fifth, Sixth, and Fourteenth Amendment [sic] to the United States Constitution and Article 1, § 2, 3, 5, 25 of the Louisiana Constitution." See id. at ¶ 35. Reynolds believes that Officer Anderson "acted pursuant to a policy or custom of the City of Greenwood Police Department in charging African American males with crimes simply because they bore resemblance to

the actual perpetrator, and thereafter dismissing charges against [sic] same." <u>See id.</u> at ¶ 38.

Additionally, Reynolds claims that Chief Gibson also acted pursuant to a similar policy. <u>See id.</u> at ¶ 40. He alleges that Chief Gibson "failed to adopt clear policies and failed to properly train its police officers as to the proper role of officers in [] the investigation and establishment of probable cause seek arrest and criminal prosecution." <u>See id.</u> at ¶ 41. He submits "that policy or custom of City of Greenwood Police Department, and its failure to adopt clear policies and failure to properly train its Police officers, were a direct and proximate cause of the constitutional deprivation suffered by [Reynolds]." <u>See id.</u> at ¶ 42.

As a threshold matter, the Court finds prescription poses an issue. The Court concludes this claim relates to the charges brought against Reynolds in Caddo Parish, LA, Angelina County, Smith County, and Gregg County, TX as a result of Officer Anderson's alleged wrongful conduct. His § 1983 claim is subject to a one-year prescriptive period, as the conduct at issue took place before July 1, 2024, when the Louisiana delictual action Civil Code article was amended. <u>See</u> LA. CIV. CODE art. 3493.1.

Reynolds filed his Original Complaint on July 17, 2024. <u>See</u> Record Document 1. The challenged conduct relating to the Caddo Parish criminal proceedings occurred in 2022. On April 1, 2022, the search warrant and arrest warrant were executed. <u>See</u> Record Document 12-1 at 9. On May 5, 2022, the Caddo Parish District Attorney filed a Bill of Information, and Reynolds appeared in the First Judicial District Court, waived arraignment, enrolled counsel, and pleaded not guilty to the charge. <u>See id.</u> at 10.

The prescription period for his first § 1983 claim began accruing from the moment Reynolds became aware he suffered an injury or had sufficient information to know he had been injured. See Holmes, 718 F. Supp. 3d at 594. From the time he was first questioned by Officer Anderson, Reynolds maintained his innocence and stated he did not commit these thefts. Therefore, from the moment the search warrant and arrest warrant were allegedly wrongfully executed, he had sufficient information to know of his claimed injuries. At the very latest, he was aware when the Bill of Information was filed in May of 2022. From the facts, Reynolds had until April or May of 2023 to file his Complaint; however, he did not file his Original Complaint until July 17, 2024. Thus, any claims against the Greenwood City Defendants that relate to the Caddo Parish criminal proceedings are prescribed.

Any claims relating to the Angelina County and Smith County, Texas criminal proceedings have also prescribed. On June 8, 2023, all charges in Angelina County against Reynolds were dismissed, meaning that any alleged unlawful conduct occurred before this date. See Record Document 5 at ¶ 27. Reynolds had sufficient information to know he may have been injured and could have filed suit. At the latest, any claims relating to the Angelina County criminal proceedings would have prescribed on June 8, 2024. As stated previously, Reynolds filed his Original Complaint on July 17, 2024.

On July 17, 2023, all charges in Smith County against Reynolds were dismissed, again signifying that any alleged unlawful conduct occurred before this date. See id. at ¶ 28. While the charges were ultimately dismissed on the date he filed his Original Complaint, the potential harm or injury must have taken place before that date since Reynolds was aware of the Smith County charges. Thus, the Court concludes Reynolds

14

had sufficient information before July 17, 2023 that he may have been injured and could have filed suit. However, since he waited until July 17, 2024 to file his Original Complaint, any claims relating to the Smith County criminal proceedings have prescribed.

The Court does not have enough facts about the Gregg County criminal proceedings to determine whether any claims related to those proceedings have prescribed. Nevertheless, all of the factual allegations contained within his first § 1983 claim are speculative legal conclusions that are insufficient at the pleading stage. Reynolds's assertions that Officer Anderson's conduct was "intentional, without probable cause, and in wanton disregard of [his] innocence" is an unsupported legal conclusion. See id. at ¶ 36.

As to his assertion that the City of Greenwood Police Department had certain policies or customs in place, this again is a speculative legal conclusion. Reynolds has failed to show that such a policy has been adopted and implemented by the police department. His general, conclusory allegations that such a policy exists is insufficient to overcome dismissal under Rule 12(b)(6). Even if prescription was not an issue, Reynolds's first claim has not been sufficiently pled since it is speculative, conclusory, and unsupported by specific facts. See Twombly, 550 U.S. 544, 127 S. Ct. 1955, Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. Therefore, Reynolds's first claim under § 1983 is **DISMISSED WITH PREJUDICE**.

(2) Negligence Claim Against Officer Anderson.

Reynolds fails to specify what Defendant was negligent and fails to cite to an applicable negligence standard. The Court concludes, based on his allegations, that

Reynolds asserts his negligence claim only against Officer Anderson, and therefore, Louisiana law applies. However, the Court is not tasked with pleading and asserting claims on behalf of Reynolds, since his claims should have been sufficiently pled and clarified in his First Amended Complaint.

Reynolds asserts that Officer Anderson "had a duty to [him] to obtain more evidence before seeking [his] arrest." See id. at ¶ 44. He avers that Officer Anderson "breached his duty…by seeking an arrest warrant for [Reynolds's] arrest merely because [his] photo bore resemblance to the still shot of the suspect in the Tractor Supply thefts." See id. at ¶ 45. He also claims Officer Anderson "breached his duty…by asserting to police in Lufkin, Tyler, and Longview, Texas that [Reynolds] was the perpetrator of thefts in Lufkin, Tyler, and Longview, Texas merely because [his] photo bore resemblance to the still shot of the suspect in the Tractor Supply thefts…." See id. at ¶ 46. Reynolds alleges that "[a]s a direct result of the breach of duty owed to [him] by [Officer Anderson], [he] was arrested in Caddo Parish, Louisiana, Angelina County, Texas, Smith County, Texas, and Gregg County, Texas, with [his] latest arrest occurring on February 14, 2024. See id. at ¶ 47.

As the Court stated previously, any claims relating to the criminal proceedings in Caddo Parish, Angelina County, and Smith County are prescribed. Reynolds admits his latest occurring arrest was on February 14, 2024. As stated above, it is not the Court's duty to assign the applicable negligence standard to Reynolds's claim. He has failed to connect Officer Anderson's alleged duty with an applicable negligence standard, signifying that he has failed to plausibly allege his negligence claim. See Twombly, 550 U.S. 544, 127 S. Ct. 1955, Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

Nevertheless, out of an abundance of caution, the Court will analyze his negligence under Louisiana law. Even if prescription was not an issue, Officer Anderson is shielded by La. R.S. 9:2798.1(B), which provides, "Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." However, subsection (B) is not applicable "(1) [t]o acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or (2) [t]o acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." LA. REV. STAT. § 2798.1(C).

While the Court will not automatically grant a motion because it is unopposed, Reynolds failed to file an opposition containing factual allegations and arguments that may have overcome this defense. His conclusory allegations contained within his second claim for negligence are insufficient. Officer Anderson's actions are discretionary, and Reynolds has failed to assert allegations that satisfy either exception under the statute. Officer Anderson is afforded discretion and should not be held liable for his discretionary acts. Therefore, Reynolds's second claim for negligence is **DISMISSED WITH PREJUDICE**.

### (3) § 1983 Claim Against All Defendants.

Reynolds's third claim appears to be a <u>Monell</u> claim because he asserts that all Defendants were acting pursuant to certain policies and customs. <u>See</u> Record Document 5 at ¶ 54. He claims that their conduct "constitutes deliberate indifference, willful

misconduct, [] intentional[,] and malicious conduct…." <u>See id.</u> at ¶ 58. His allegations consist of speculative legal conclusions, and he has failed to identify which policy or custom caused his alleged injuries. Reynolds has not submitted any factual assertions pointing to an actual policy or custom that has been adopted and promulgated by Defendants. His general allegations that all Defendants were acting pursuant to certain policies and customs in their specific departments is insufficient to overcome Rule 12(b)(6) dismissal. <u>See</u> <u>Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, <u>Iqbal</u>, 556 U.S. at 678, 129 S. Ct. at 1949. Therefore, Reynolds's third claim under § 1983 is **DISMISSED WITH PREJUDICE**.

### (4) § 1983 Claim For Violation of Policy and Custom Against the DA Defendants.

As the Court previously concluded, any claims relating to the criminal proceedings in Caddo Parish, Angelina County, and Smith County are prescribed and therefore dismissed with prejudice. Reynolds's fourth claim only relates to the Caddo Parish criminal proceedings because only the Caddo Parish District Attorney's Office is mentioned in his factual allegations. Therefore, his fourth claim is prescribed.

Even if this attempted <u>Monell</u> claim was not barred by prescription, it contains nothing more than formulaic language and conclusory allegations insufficient to overcome dismissal. Reynolds's claims the DA Defendants followed several "unconstitutional customs, practices, and/or policies." <u>See</u> Record Document 5 at ¶ 61. He asserts vague and conclusory policies, customs, and practices of the Caddo Parish District Attorney's Office. There is no factual support that these policies, customs, or practices actually exist. Furthermore, even if the Court did not find these allegations vague and conclusory, the DA Defendants, as sued in their individual capacities, are shielded by absolute

prosecutorial immunity because they actions are intimately associated with bringing criminal charges and proceedings through the criminal court process, thereby covered by this immunity. See Holmes, 718 F. Supp. 3d at 597–98. Therefore, Reynolds's fourth claim under § 1983 is **DISMISSED WITH PREJUDICE**.

### (5) Louisiana Malicious Prosecution Claim Against All Defendants.

Under his malicious prosecution claim, Reynolds alleges that all Defendants "caused [him] to be arrested and charged with crimes that he did not commit and have attempted to coerce [him] into a plea of guilty so as to cover up the unlawful acts and omissions" of all Defendants. See Record Document 5 at ¶ 67. Additionally, he claims his[2] arrest and prosecution "were initiated without probable cause" because "Defendants knew or reasonably should have known that no probable cause existed to support the charges brought against him but they intentionally and maliciously pursued prosecution on the false charges…." See id. at ¶ 68.

As the Court as continuously stated throughout this Ruling, any claims relating to the charges and criminal proceedings brought in Caddo Parish, Angelina County, and Smith County are prescribed. The Court is unsure if the charges and criminal proceedings brought in Gregg County are prescribed. Nonetheless, his malicious prosecution claim fails because it contains speculative legal conclusions that do not overcome dismissal. For example, Reynolds's assertion that Defendants "intentionally and maliciously pursued

---

[2] The Court points out that Paragraph 68 of his First Amended Complaint mentions the arrest and prosecution of "Mr. Phillips." The Court is unaware of a party with this name and believes this was a typo or simple error; therefore, the Court will assume the paragraph meant to say "Mr. Reynolds."

prosecution" is insufficient at the pleading stage. See Twombly, 550 U.S. 544, 127 S. Ct. 1955, Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

Even if his malicious prosecution claim was not replete with uncorroborated legal conclusions, the DA Defendants, in their individual capacities, are shielded by prosecutorial immunity, and the Greenwood City Defendants, in their individual capacities, are shielded from liability by La. R.S. 2798.1. Louisiana law is in line with federal law on prosecutorial immunity. See Holmes, 718 F. Supp. 3d at 602. Pursuing criminal charges and drafting guilty pleas constitutes conduct that is intimately associated with the judicial phase of the criminal process. Even if the DA Defendants' alleged misconduct is intentional or malicious, this absolute immunity still applies. See id. Additionally, the acts of the Greenwood City Defendants qualify as policymaking and/or discretionary acts under La. R.S. § 2798.1(B). Reynolds has failed to assert allegations that satisfy either exception under the statute; thus, the Greenwood City Defendants are afforded discretion and should not be held liable for such acts. Therefore, Reynolds's fifth claim for Louisiana malicious prosecution is **DISMISSED WITH PREJUDICE**.

(6) § 1983 Claim for Failure to Disclose Exculpatory Evidence/Brady Violation Against All Defendants.

Under his sixth claim, Reynolds alleges that all Defendants acted pursuant to certain policies and customs of their respective departments. See Record Document 5 at ¶ 72. He asserts that Defendants deprived him of his rights under the "Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Brady v. Maryland and its progeny when they knew of exculpatory evidence and were actively investigating, or knew of an active investigation, concerning other suspects and failed to disclose such

information to [] Reynolds or his counsel." <u>See id.</u> at ¶ 73. He claims that Defendants' conduct "constitutes deliberate indifference, willful misconduct, and intentional and malicious conduct…." <u>See id.</u> at ¶ 75.

As the Court previously concluded, any claims relating to the charges and criminal proceedings brought in Caddo Parish, Angelina County, and Smith County are prescribed. The Court is unsure if the charges and criminal proceedings brought in Gregg County have prescribed. However, even if his claims were not prescribed, his allegations contained within his sixth claim are mere legal conclusions that do not survive dismissal under Rule 12(b)(6). Reynolds has not provided sufficient factual evidence of what information was not disclosed by Defendants; rather, he merely states that this exculpatory evidence exists. With respect to his alleged <u>Brady</u> violations, there was no trial on any of the criminal charges against him; therefore, <u>Brady</u> does not apply because it "'is not a pretrial remedy.'" <u>Phillips v. Whittington</u>, 497 F. Supp. 3d 122, 159 (W.D. La. 2020).

Similar to his other claims, Reynolds's sixth claim is replete with unsupported legal conclusions. He has failed to identify, with the requisite degree of specificity, Defendants' alleged problematic policies and/or customs. Additionally, he has failed to sufficiently plead a § 1983 claim for failure to disclose exculpatory evidence, also known as a <u>Brady</u> violation. Therefore, Reynolds's sixth claim under § 1983 for failure to disclose exculpatory evidence/<u>Brady</u> violation is **DISMISSED WITH PREJUDICE**.

## CONCLUSION

For the reasons state above,

**IT IS ORDERED** that the Greenwood City Defendants' Motion to Dismiss (Record Document 12) is **GRANTED**. All claims asserted by Reynolds against the Greenwood City Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the DA Defendants' second Motion to Dismiss (Record Document 14) is **GRANTED**. All claims asserted by Reynolds against the DA Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the DA Defendants' first Motion to Dismiss (Record Document 9) is **MOOT**, as all claims asserted against the DA Defendants have been dismissed with prejudice. Reynolds cannot claim any punitive damages or other damages against any Defendant.

A Judgment consistent with this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 28th day of July, 2025.

_____

UNITED STATES DISTRICT COURT JUDGE